## MATTER OF WILFRED B. KEENAN.

October 9, 1942. — February 13, 1943.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Supreme Judicial Court,* Jurisdiction, Membership in the bar, Superintendence of inferior courts, Records. *Practice, Civil,* Membership in the bar, Review by the Supreme Judicial Court, Information, Parties, Entry of judgment, Order for filing of papers. *Jurisdiction,* Membership in the bar. *Attorney at Law. Res Judicata. Law of the Case. Evidence,* Judicial notice, Presumptions and burden of proof, Of unfitness for membership in bar.

In determining questions of law raised upon an information, filed in this court by leave, respecting allowance by the Superior Court of a petition for admission to the bar of one who had been disbarred, this court considered, apart from statements in the information, matters which appeared of record in this court in previous proceedings respecting such person's disbarment.

An order by this court, directing that informations by the Attorney General and by certain bar associations relating to a proceeding in the Superior Court, resulting in the granting of a petition for admission to the bar of one who had been disbarred, be received and entered upon this court's docket and making provision for notice to the respondent and subsequent pleadings, was in the nature of an administrative order only and was not a ruling precluding the respondent from contending that this court had no jurisdiction in the premises.

Favorable action by the Superior Court upon a petition for admission to the bar presented by one who had been disbarred was subject to review by this court in appropriate proceedings.

Subject to the limitation that the essential elements of notice and opportunity to be heard must be preserved, the judicial department, in view of its exclusive control of membership in the bar, has power to adopt any procedure in a proceeding for reviewing the granting of a petition for admission to the bar, as well as in a proceeding for admission to the bar or for disbarment, that it deems appropriate for such a proceeding; procedure applicable to actions at law, whether established by statute or by judicial decision, is to be followed only so far as the judicial department deems it to be appropriate.

The determination by the judicial department of what procedure is appropriate to be followed in review in proceedings for disbarment or for admission to the bar must be by the Supreme Judicial Court.

The mere fact, that a judgment favorable to the petitioner had been entered in the Superior Court upon a petition for admission to the bar presented by one who had been disbarred, did not preclude this court from reviewing such action in appropriate proceedings.

An information, presented to this court by a bar association or by the Attorney General, which substantially describes action by the Superior Court admitting to the bar one who had been disbarred and which submits "the entire matter" to this court "for such action as this court shall deem expedient in the interests of public welfare," is an appropriate proceeding for review of the matter by this court; no statutory method of review now provided would be appropriate or adequate.

Such an information was an appropriate procedure for review notwithstanding that the informant had not participated at all in the proceeding in the Superior Court, or that, having participated therein, the informant had failed to bring to this court exceptions saved in the Superior Court, or that the allegations in the information did not entitle the informant "to any judgment of or to any relief from" this court.

A judgment of disbarment of an attorney at law is also an adjudication of the facts upon which the judgment was based and conclusive evidence of his unfitness to be a member of the bar at the time of the disbarment, and, if he later petitions for admission to the bar, such adjudication remains evidence of such unfitness which he has the heavy burden of overcoming.

A decision by this court, upon a report of the question by the Superior Court, that the Superior Court had jurisdiction of a petition for admission to the bar by one who had been disbarred because he had corruptly influenced jurymen, did not preclude this court from determining, in a review in appropriate proceedings, whether a judgment of the Superior Court granting such petition should be set aside because the offence for which the petitioner had been disbarred was of such a kind as to preclude his readmission as a matter of law.

Upon an information to this court, for such action as it should deem expedient in the interests of the public welfare, relating to a proceeding in the Superior Court resulting in a judgment admitting to practice as an attorney at law a person who previously had been disbarred on the ground that he "corruptly influenced . . . jurymen . . . and was thereby guilty of gross misconduct," there were presented, as substantial questions worthy of judicial inquiry in this court's discretion, at least the questions whether the offence leading to the disbarment was of such a kind that, in the present state of the decisions, it forever precluded subsequent admission to the bar, and, if the offence were not of that kind, whether evidence, presented to the Superior Court and leading to the judgment for admission to the bar, was of sufficient weight to overcome the evidence of lack of moral character supplied by the adjudication of disbarment.

Upon presentation for review by this court of all-inclusive records of a proceeding in the Superior Court concluding with a judgment admitting to the bar one who previously had been disbarred, this court is not precluded from considering the weight of evidence.

Upon presentation to this court of an information which it deemed appropriate proceedings for review by it of action in the Superior Court admitting to the bar one who had been disbarred because he had

"corruptly influenced . . . jurymen . . . and was thereby guilty of gross misconduct," an order was made that the Chief Justice of the Superior Court send to this court the record of the proceedings in that court, such record to include or to be accompanied by, as an extension thereof, copies of all papers filed in the case and a transcript of the evidence in the case if such evidence had been taken by an official stenographer.

THREE INFORMATIONS, offered for filing with this court and on June 24, 1942, received for filing pursuant to the order described in the opinion.

*R. T. Bushnell,* Attorney General, (*A. J. Santry & W. B. Luther,* Special Assistant Attorneys General, with him,) for the Attorney General.

*E. O. Proctor,* for Bar Association of the City of Boston.

*M. A. Shattuck,* for Massachusetts Bar Association.

A committee for the Bar Association of the County of Middlesex submitted a brief.

*F. L. Simpson,* for Keenan.

FIELD, C.J.    The Attorney General of the Commonwealth offered for filing in the full court of the Supreme Judicial Court a document entitled an "information" relating to proceedings in the Superior Court upon the petition of Wilfred B. Keenan — previously disbarred from the office of attorney in the courts of the Commonwealth by a judgment of the Supreme Judicial Court — for admission to the bar.    The Massachusetts Bar Association and the Bar Association of the City of Boston each offered for filing a document also entitled an "information" of somewhat similar tenor.    Each of these documents is hereinafter referred to as an "information."    Each information concluded with the following: "Wherefore, the entire matter is submitted for such action as this court shall deem expedient in the interest[s] of the public welfare."

The full court without hearing arguments made the following order: "Whereas the Attorney General of the Commonwealth, The Bar Association of the City of Boston and The Massachusetts Bar Association, have each presented an information to the Supreme Judicial Court for the Commonwealth in the matter of the admission of Wilfred B. Keenan as an attorney and counsellor at law in the courts

of the Commonwealth, and have requested that the said informations be entered of record in said court and that such action may be taken thereunder as the court may consider appropriate: It is ordered that the clerk receive the said informations and enter them upon the docket of the court, and that in the matter of each of said informations the said Wilfred B. Keenan shall appear and file all his pleadings in defence thereof by way of demurrer, plea, answer and otherwise as he may be advised, on or before the first Monday of August, 1942, and upon the filing of subsequent pleadings, if any, by the informants, the three informations and the pleadings thereunder shall be presented to the Full Court upon the informations and the pleadings for the determination of all issues raised thereby not involving the actual trial of issues of fact, and the clerk shall give notice to the said Wilfred B. Keenan of the filing of these informations and of this order by sending by registered mail to the said Wilfred B. Keenan a copy of this order." The said Wilfred B. Keenan, hereinafter referred to as the respondent, thereupon filed with respect to each of the so called informations a "plea to the jurisdiction" and, without waiving such "plea to the jurisdiction," a "demurrer." The cases then came on to be heard by the full court and were argued by brief and orally by counsel for the respondent, and by brief and orally by the Attorney General, by counsel for the Massachusetts Bar Association and by counsel for the Bar Association of the City of Boston, and a brief was filed by leave of court in behalf of the Bar Association of the County of Middlesex.

Many of the matters set forth in the informations are of record in this court and, even apart from the statements with respect to such matters in the informations, are before us for consideration. *Commonwealth* v. *DiStasio,* 298 Mass. 562, 567. *Culhane* v. *Foley,* 305 Mass. 542, 543. *Curley* v. *Boston,* 312 Mass. 58, 61.

The history of the litigation relating to the membership of the respondent in the bar, as appears of record in this court, is as follows: An original petition was filed in the Supreme Judicial Court in behalf of a committee of citizens

of the Commonwealth. In it were allegations that abuses and unprofessional conduct on the part of members of the bar existed in connection with actions of tort for personal injuries and property damage. It contained a prayer that an inquiry be ordered. An order was entered directing the inquiry and two special commissioners were appointed. Hearings were had before one of these commissioners respecting alleged conduct of the present respondent. The commissioner filed a report concerning this respondent, recommending that proceedings be taken for his disbarment. An order of notice was issued to him and there was a trial before a single justice of this court.

After the trial the single justice filed written findings, rulings and an order for disbarment. Included therein were findings that the testimony of one witness tended to show that in five instances the respondent corruptly influenced or corruptly attempted to influence a juryman or jurymen in five cases tried in Suffolk County, but that, as there was no testimony adequately corroborating this testimony as to four of the cases, the charges made against the respondent with reference to jurymen in those cases were not proven. But as to the fifth case the single justice found that the testimony of this witness "was adequately corroborated by other evidence and that the respondent Keenan corruptly influenced three jurymen who sat in that case and was thereby guilty of gross misconduct." The corroborating evidence consisted of statements made by one of those three jurymen, who had died prior to the trial — such statements having been made before the date that order of notice upon the commissioner's report was issued to the respondent. The respondent excepted to the admission of this evidence. This court held that the evidence was rightly admitted, saying that these statements "were categorical, detailed and plenary. They amply support the finding of the single justice to the effect that the respondent 'corruptly influenced three jurymen who sat in' a specified case tried in the Superior Court 'and was thereby guilty of gross misconduct.' . . . They plainly implicated the respondent in the act of influencing the conduct of the

three jurymen by the payment of money." *Matter of Keenan*, 287 Mass. 577, 585. After rescript from the full court a judgment was entered by a single justice of the court on October 19, 1934, disbarring the respondent. *Keenan, petitioner*, 310 Mass. 166, 167.

Thereafter a petition was filed by the present respondent in the Superior Court on December 28, 1939, for admission to the bar. An order of notice was issued thereon to the Bar Association of the City of Boston. Upon objection by the association to the jurisdiction of the Superior Court to hear the petition, a judge of that court ruled that it had jurisdiction of the petition and entered an order overruling the objection. The judge reported the jurisdictional question to this court. This court held that the Superior Court had jurisdiction of the petition and that there was no error in the ruling and order of the trial judge. *Keenan, petitioner*, 310 Mass. 166, 185. These matters are stated in somewhat less detail in each of the informations. Each of them states that the "matter was then heard by a Justice of the Superior Court who entered an order on December 31, 1941, reinstating Keenan to the office of attorney at law in the courts of the Commonwealth."

Each of the informations — with immaterial differences in phraseology — contains the following: "The Bar Association of the City of Boston, to which notice of the petition had been given by order of the Superior Court and which had opposed its allowance, claimed an exception to the order, duly filed its exceptions, and also filed a motion that the proceedings be reported to this court to raise the question whether as a matter of law the petitioner on the record and the testimony adduced in the case is debarred from reinstatement or readmission to the bar. The Attorney General for the Commonwealth and the Massachusetts Bar Association filed petitions for leave to intervene in which they asked that the case be reported so that this court might finally determine whether there are offences by attorneys so serious as forever to debar one who has committed them from reinstatement or readmission, and whether the offence for which the said Keenan had been

disbarred was such an offence. The Justice disallowed the exceptions of the Bar Association of the City of Boston and denied its motion for a report and [denied] the petitions for leave to intervene of the Attorney General and the Massachusetts Bar Association. The Attorney General claimed an exception to the denial of his petition to intervene and filed exceptions which were disallowed. The said Keenan's motion for entry of judgment on the order for reinstatement was allowed on April 17, 1941 [2?]." The information of the Massachusetts Bar Association and that of the Bar Association of the City of Boston — with immaterial differences in phraseology — contain the following: "The record of the proceedings before the Justice of the Superior Court, to which reference has been made, contains statements by Wilfred B. Keenan that his standards of duty to the courts and to his office as attorney had never changed and were the same before his disbarment as they were at the time when said testimony was given by him, and at no point in said proceedings did said Keenan either himself or through his counsel admit the commission of the offences for which he was disbarred and which in the original disbarment proceedings he denied having committed, nor did he at any time express any regret or repentance therefor." The other statements in the informations relate to matters of law and to the reasons for and purpose of bringing the matters set forth in the informations to the attention of this court.

The so called pleas to the jurisdiction and demurrers to the several informations are closely similar, and minor differences need not be pointed out. Nor need we consider any technical questions of pleading or any differences in effect between the pleas to the jurisdiction and the demurrers. The respondent's pleadings set up, in substance, as matters of defence to each information: (a) that this court has no jurisdiction upon the information to review, revise or reverse the judgment entered in the Superior Court readmitting the respondent to the bar, (b) that the informant has no standing to bring such an information, (c) that the "allegations of said 'Information' are vague

and indefinite and set forth no cause of action or ground for relief at law or in equity" and no allegations therein are sufficient to entitle the informant "to any judgment of or to any relief from this honorable court," and, without waiving other grounds of defence, (d) that "there are no allegations of fact or law set forth in said 'Information' showing or tending to show that the Superior Court committed error of law in the proceedings in said court, set forth in said 'Information.'" These pleadings raise only questions of law or, at most, only questions "not involving the actual trial of issues of fact." According to the order of the full court, upon the completion of the pleadings all questions "raised thereby not involving the actual trial of issues of fact," are to be considered by the full court. For the determination of these questions the material facts of record in this court in other cases relating to the respondent and the material facts alleged in the informations not inconsistent therewith are to be taken as true.

First. The primary contention of the respondent is that the full court is without jurisdiction upon any of these informations to review the judgment of the Superior Court "reinstating" the respondent as a member of the bar — an expression, as applied to a person who has been disbarred, equivalent to "readmitting" or "admitting" him to the bar. *Keenan, petitioner,* 310 Mass. 166, 174–175.

This contention is open to the respondent notwithstanding the order of the court that "the clerk receive the said informations and enter them upon the docket of the court" with provision for subsequent pleadings. This order was in the nature of an administrative order for the purpose of providing for argument, hearing and determination of questions, including questions of jurisdiction, that might be raised by the informations and the pleadings of the respondent thereto, and was not expressly or impliedly a ruling that the court had jurisdiction of the informations.

While it was held in *Keenan, petitioner,* 310 Mass. 166, that the Superior Court had jurisdiction of the petition of the present respondent for admission to the bar after he had been disbarred by virtue of "a statute in aid of the per-

formance of the duties of the judicial department" (page 181), it was pointed out that the exercise of this jurisdiction by the Superior Court is "subject, by necessary implication, to review by the Supreme Judicial Court in appropriate proceedings." Page 179. See also page 180. The word "review" in this phrase quoted from *Keenan, petitioner* — and throughout the present opinion unless in any instance the context shows a more restricted meaning — is used in a broad sense including any method of revision of the action of the Superior Court by the Supreme Judicial Court. Proceedings upon the informations now under consideration, whatever the scope of such proceedings in respect to matters of law or matters of fact, would constitute "review" within the meaning of the phrase quoted. But this phrase in terms limits "review" in this broad sense to review in "appropriate proceedings." Whether review of the action of the Superior Court favorable to this respondent upon informations such as are now under consideration constitutes "review . . . in appropriate proceedings" has a bearing upon this primary contention of the respondent of lack of jurisdiction of the full court as well as upon other aspects of the case.

The precise question whether review upon such informations constitutes "appropriate proceedings" for review of action of the Superior Court favorable to the respondent is a matter of first impression in this court. Indeed, the general question as to what constitutes "appropriate proceedings" for review by the full court of action of the Superior Court favorable to a person who seeks admission to the bar in that court or whose disbarment is sought therein has not previously been decided by this court. The cases that have come before the full court for review of action of a judge of the Superior Court or of action of a single justice of the Supreme Judicial Court relating to membership in the bar have been brought to the full court for review of action unfavorable to the person seeking admission to the bar or resisting disbarment. *Matter of Mayberry*, 295 Mass. 155, was a case of this nature where review by the full court of the action of a single justice of the

Supreme Judicial Court disbarring the respondent in the case was sought on exceptions. The case, however, involved review, in a broad sense, by the single justice of previous action by him favorable to the respondent. The single justice at the first hearing before him had entered an "order for judgment" dismissing the proceeding against the respondent for his disbarment, but later had ordered such "order for judgment" vacated and had heard the case de novo. This court held that there was no error even if the so called "order for judgment" constituted a final judgment. But the decision did not prescribe the method of review by the full court of action of a trial court favorable to a person seeking admission to the bar or resisting disbarment. No decided case has established the "appropriate proceedings" for such review. Such proceedings are not necessarily the same as for review of action unfavorable to the person seeking admission to the bar or resisting disbarment by which such person is aggrieved.

The primary contention of the respondent of lack of jurisdiction in the full court has two phases: (a) that the full court has no jurisdiction to review action of the Superior Court with respect to admission to the bar in a proceeding by information filed in this court, irrespective of the fact that such action of the Superior Court is embodied in a final judgment, and (b) that even if the full court has such jurisdiction in this form of proceeding to review action of the Superior Court with respect to admission to the bar where there has been no final judgment, such review is precluded in the case of the respondent by reason of the entry of a final judgment in his favor.

1. We consider first the matter of jurisdiction, apart from the fact that the action in favor of the respondent is embodied in a judgment that purports to be final.

The contention of the respondent upon this phase of the matter is, in substance, that the informations now before the court do not constitute "appropriate proceedings" for review of the action of the Superior Court in admitting the respondent to the bar since they are not within any statutory provision for review by this court of action of the Su-

perior Court or, at least, are not in accordance with procedural requirements for such review of general application whether established by statute or by judicial decision.

There are no express statutory provisions purporting to deal specifically with review by this court of action of the Superior Court in proceedings for admission to the bar or for exclusion therefrom by disbarment. And it is obvious, as urged by the respondent, that these informations do not come within the terms of any statute providing a specific method for review by this court of action of the Superior Court. The question of the jurisdiction of this court to review action of the Superior Court upon such informations depends, therefore, upon general principles governing the jurisdiction and powers of the judicial department with respect to membership in the bar.

Matters relating to membership in the bar, with respect both to admission to the bar and to disbarment, have unique standing as has previously been pointed out, particularly in. *Opinion of the Justices*, 279 Mass. 607, 289 Mass. 607, and in *Keenan, petitioner*, 310 Mass. 166, 171–172. "Permission to practise law is within the exclusive cognizance of the judicial department." *Opinion of the Justices*, 289 Mass. 607, 613. *Keenan, petitioner*, 310 Mass. 166, 172. "No statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law." *Opinion of the Justices*, 279 Mass. 607, 611. *Keenan, petitioner*, 310 Mass. 166, 171. Statutes purporting to regulate admission to the bar — not within the limited class of statutes, not here involved, that "specify qualifications and accomplishments" and "will be regarded as fixing the minimum and not as setting bounds beyond which the judicial department cannot go" and as fixing "limitations, not upon the judicial department but upon individuals seeking admission to the bar," *Opinion of the Justices*, 279 Mass. 607, 611 — are to be interpreted as "making provision in aid of the judicial department in reaching a proper selection of those qualified for admission as attorneys to practice in the courts." *Opinion of the Justices*, 279 Mass. 607, 610. *Keenan, petitioner*, 310 Mass.

166, 173. And statutes stating the grounds upon which an attorney may be disbarred also are to be so interpreted, and are not to be interpreted as limiting the grounds for disbarment. *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 182–183. *Keenan, petitioner*, 310 Mass. 166, 170.

The principle that statutes are to be interpreted as provisions "in aid of the judicial department" in performing its judicial function with reference to membership in the bar, and not as limitations upon action of the judicial department, is applicable to statutes governing procedure that in form are of general application. "In *De Propper, petitioner*, 236 Mass. 500, 501, it was said that a 'petition for admission to the bar is a proceeding at law and not in equity,' and procedural requirements applicable to actions at law were treated as applicable to such a petition." *Keenan, petitioner*, 310 Mass. 166, 179–180, citing *Matter of Keenan*, 287 Mass. 577, 580–584; *Matter of Mayberry*, 295 Mass. 155, 166–167. See also *Matter of Ulmer*, 268 Mass. 373, where it was said that a proceeding for disbarment "is a proceeding at law" (page 392), and, "being civil and not criminal in its nature, the rules of evidence applicable to civil trials rightly were enforced." Page 400. And in *Matter of Stern*, 299 Mass. 107, 108–109, it was said of such a proceeding that while "it is true that a proceeding such as this is civil and not criminal in character, *Matter of Mayberry*, 295 Mass. 155, [166,] yet this characteristic has generally been confined to questions of evidence, the required amount of proof and other matters of procedure." But in *Boston Bar Association* v. *Casey*, 227 Mass. 46, 51, it was said that a "petition for disbarment, being on the law side of the court, . . . is governed by the rules of practice at common law, so far as applicable."

Though this court has consistently described proceedings for admission to the bar and proceedings for disbarment as proceedings at law, it has with equal consistency since *Randall, petitioner*, 11 Allen, 473, recognized that proceedings for disbarment are not in the strict sense actions at law subject to all the procedural requirements applicable to such an action. With respect to the jurisdiction of the

court to inquire into the conduct of attorneys this court in *Matter of Mayberry*, 295 Mass. 155, 160, said: "The court may exercise this jurisdiction without compliance with the requirements of formal procedure which must be observed in ordinary litigation."

The nature of a proceeding for disbarment was fully considered by the court in *Boston Bar Association* v. *Casey*, 211 Mass. 187, where it was said by the court, speaking by Mr. Justice Hammond (pages 191–192): "This is not a proceeding between two parties where the court is asked to adjudicate conflicting claims as to some right, corporeal or incorporeal, and where a decision favorable to one party is necessarily to that extent unfavorable to the other. It is rather in the nature of an inquest or inquiry as to the conduct of the respondent. In the result of this inquiry the association has no interest. It can gain nothing nor can it lose anything whatever may be the result. It simply calls the attention of the court to the alleged misconduct of an attorney, not for the purpose of obtaining redress of any grievance suffered by itself, but only that the court, if so disposed, may inquire into the charge and act accordingly. Such this petition [the petition then before the court] plainly is upon its face. It sets forth no wrong done to it; it asks for no relief. The prayer at the end of the petition does not ask for such a decree as justice and equity may require as between the association and respondent, but in substance for such an order as the court shall 'deem expedient in the interests of the public welfare.' And such is the proceeding in reality. An attorney at law is not merely a member of a profession practising for personal gain, nor is he on the other hand a public officer. He is an officer of the court. *Ex parte Garland*, 4 Wall. 333. *Petition of Splane*, 123 Penn. St. 527, 540. The court, by reason of the necessary and inherent power vested in it to control the conduct of its own affairs and to maintain its own dignity, has a summary jurisdiction to deal with the alleged misconduct of an attorney. A proceeding for disbarment is simply the exercise of jurisdiction over an officer, an inquiry into his conduct not for the purpose of granting redress to a client

or other person for wrong done, but only for the maintenance of the purity and dignity of the court by removing an unfit officer. As stated by Andrews, C.J., in *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 15, '[The proceedings are] an investigation by the court into the conduct of one of its own officers, not the trial of an action or suit.' In that case the petition or complaint was filed by a committee of the Fairfield County bar, and the following language was used by Andrews, C.J.: 'Neither the whole bar of Fairfield County nor its committee were parties to an action in any proper sense. They were not prosecuting any matter of their own. They were not plaintiffs. They were performing their sworn duty to the court by bringing to its knowledge the misdoing of one of its agents.' This is an accurate statement of the relation sustained to this case [the case then before the court] by the petitioner. It has no control over the proceedings, nor any rights as to them, not even to an order of notice. The question whether any action shall be taken on the petition and, if so, what, is entirely within the discretion of the court. From the moment of the filing of the petition, the petitioner in law dropped completely out of the case, and the matter was entirely in the hands of the court to make the inquest on its own account and to such extent as it saw fit." For the propositions so stated this case has been cited by this court, sometimes with quotations of excerpts from the opinion. *Matter of Cohen*, 261 Mass. 484, 486. *Matter of Ulmer*, 268 Mass. 373, 397. *Matter of Stern*, 299 Mass. 107, 109. These propositions are firmly established with respect to proceedings for disbarment.

In accordance with the nature of proceedings for disbarment as pointed out in the *Casey* case, it has been held that certain procedural requirements applicable to ordinary actions at law, even though statutory, are not applicable to proceedings for disbarment. Thus in *Matter of Ulmer*, 268 Mass. 373, 392, it was held that the "strict terms of the statute as to venue are not applicable." And whatever may be true with respect to the jurisdiction of the Superior Court to hear civil actions at law at a session held

for the transaction of criminal business, it was held in *Matter of Stern*, 299 Mass. 107, 108–109, that that court had jurisdiction to hear a disbarment proceeding at such a session. A proceeding for disbarment need not be commenced by an ordinary writ of summons and attachment — whether or not it may be. In *Randall, petitioner*, 11 Allen, 473, 481, however, it was said of a proceeding for disbarment, where it was argued that there was an omission "to issue an attachment against . . . [the respondent], or summons to appear, or a rule to show cause": "Undoubtedly it would have been regular and proper to issue such process. But it was not essential, and the omission to issue it has worked no harm to the . . . [respondent]." Elsewhere in the opinion it was said that usually such proceedings "are commenced by rule to show cause, or by an attachment or summons to answer," but that "when the court judicially know of the misconduct of an attorney, they will of their own motion order an inquiry to be made by a master without issuing any process whatever." Page 479. Compare, however, *Matter of Sleeper*, 251 Mass. 6, 21. In *Matter of Allin*, 224 Mass. 9, 11, it was said that a "proceeding for the removal of an attorney at law from his office is not instituted, prosecuted or forwarded by a writ." In that case an order of notice had been issued and served upon the respondent, and the court held that this was sufficient, even though such notice "was not under the seal of the court and did not bear *teste* of the first justice of the court" (page 10) as required in the case of writs by the Constitution of the Commonwealth. Part II, c. 6, art. 5. See R. L. c. 166, § 1 (now G. L. [Ter. Ed.] c. 220, § 2); R. L. c. 167, §§ 15, 19, 20, 21 (now G. L. [Ter. Ed.] c. 223, §§ 16, 20, 21, 22). The case of *Philbrick* v. *Creed*, 228 Mass. 382, 383, was a bill in equity seeking the disbarment of an attorney at law and was begun by an ordinary writ of summons and attachment. The court said: "Such a proceeding cannot be instituted or maintained in this way," and affirmed a decree dismissing the bill. The fact that the proceeding was in equity doubtless was a sufficient ground for dismissing the bill, apart from any objection to the

form of process or any other objection to the maintenance of the proceeding. The essential feature of process is that it be sufficient to notify the respondent of the nature of the charge against him. In *Matter of Sleeper*, 251 Mass. 6, 21, an order of disbarment was vacated because it was based on the ground of perjury committed in the pending trial, and no order to show cause why the respondent should not be disbarred on that ground had been issued to him, although the finding of such perjury was warranted by the evidence. The court adopted the statement in *Ex parte Robinson*, 19 Wall. 505, 513: "The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights." Page 18.

Moreover, the statement of the charges against the respondent need not meet the requirements of pleading in an action at law. This is manifest from the *Sleeper* case already referred to. The fatal defect in that case was not the omission of the charge of perjury committed at the trial of the case from the petition for disbarment upon which the case was heard, but the omission to give to the respondent notice of this charge. This appears from the fact that the court said that if the trial judge "had issued to the respondent an order to show cause why he should not be stricken from the roll of attorneys for the cause of perjury committed in the pending trial, he could have heard it summarily and entered the judgment thereon which seemed to him to be required." Page 21. The practice suggested in the *Sleeper* case was followed in the case of *Matter of Stern*, 299 Mass. 107. The respondent in that case, an attorney at law, had pleaded guilty in the Superior Court to indictments for larceny. "Thereafter, by order of the court and upon its own motion, the order reciting in effect that the respondent had pleaded guilty to these indictments and that it appeared that he was a member of the bar, order of notice issued requiring him to appear before the court for the transaction of criminal business on a stated day and show cause why he should not be disbarred from further practice in the courts of the Commonwealth." The respond-

ent appeared as directed and, after a hearing, an order of disbarment was entered. Page 108. The respondent in this court contended that since "no petition . . . was filed for his removal, the Superior Court was without jurisdiction to hear and determine the matter." Page 109. The court decided against this contention.

The decision in the *Stern* case is in line with decisions and statements of this court in previous cases. Respondents in these cases contended for the technical niceties of pleading in criminal cases, but these contentions were met by statements showing that not even the requirements of pleading in civil actions at law applied to proceedings for disbarment. In *Randall, petitioner*, 11 Allen, 473, 479, it was said with respect to proceedings for disbarment: "No complaint, indictment or information was ever necessary as the foundation of such proceedings. . . . No formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding." In *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 184, after quoting from the language here quoted from the *Randall* case, the court said: "It is enough if in some proper way the attorney is reasonably and definitely informed of the matters alleged against him, and given an opportunity of being heard in answer to them. . . . In the present case it sufficiently appears that the matters relied on by the petitioner were made known in the charges and specifications, even though they were not stated accurately . . . . The general charge was in proper form, and it is immaterial that the specifications were not proved exactly as alleged." In *Boston Bar Association* v. *Casey*, 196 Mass. 100, 111, it was said with respect to a contention that there was a variance between the allegations of the petition and the proof: "No question, however, of variance seems to have been raised at the hearing, and it was, of course, too late to raise it for the first time at the argument of the exceptions in this court. But while the particulars in respect to the matter relied on were not stated with entire accuracy in all respects, it clearly appears, we think, that the respondent was fully informed as to the substance of the charge against him and had the

fullest opportunity to present such facts and evidence bearing upon it as he desired," and this contention was not sustained. In *Boston Bar Association* v. *Scott*, 209 Mass. 200, it was said, citing the *Randall*, *Greenhood* and *Casey* cases: "It has been frequently decided that in petitions of this kind the technical nicety of common law criminal pleading is not required. . . . The respondent was fully and fairly informed of the general nature of the charges against him. . . . No special form of procedure is prescribed for such a petition as this is, and while courts are always sedulous to see that an attorney at law is given opportunity for a full and fair hearing, it is to be borne in mind that the primary end in view is an inquest into the conduct of one of its officers. In such an inquiry, mere forms not affecting its merits should not stand in the way of protecting the court and the public by appropriate action after a full hearing." Page 203.

Neither in *Matter of Keenan*, 287 Mass. 577, nor in *Matter of Mayberry*, 295 Mass. 155, was there any petition against the individual respondent. Each of these cases was brought before the court in the manner already described in stating the history of the present case. After a commissioner appointed by the court had filed a report concerning the respondent in which the commissioner recommended that proceedings be taken for the disbarment of the respondent, order of notice was issued to him to show cause why the recommendation should not be followed, and trial was had upon the issues raised in the report, resulting in a decision adverse to the respondent. This court in the *Keenan* case, while recognizing that a "petition for disbarment is frequently filed with allegations of misdoings," said that a "rule to show cause or a summons to answer may be a sufficient commencement of the proceeding. No formal or technical description of his alleged offence is necessary but in some way the charge must be set forth and brought to the knowledge of the respondent" (page 582), and said further that the "procedure has been according to established practice." Page 587.

In *Matter of Keenan*, 287 Mass. 577, 580–584, the question arose as to the admissibility of statements of a deceased

person which in ordinary actions at law are admissible only by virtue of a statute. G. L. (Ter. Ed.) c. 233, § 65. The court held such statements to be admissible on the ground that the language of § 65 was broad enough to cover proceedings for disbarment. The court added, however: "Section 65 is a statute which the courts would naturally adopt by analogy in that class of cases even if less clearly applicable as matter of interpretation" (page 583), although saying that since the statute was applicable to disbarment proceedings it need not be decided whether apart from the statute the evidence would be admissible.

It is a necessary conclusion from the cases here referred to that in disbarment proceedings procedure applicable to actions at law, whether established by statute or by judicial decision, is to be followed only so far as such procedure is appropriate for a proceeding of the nature of a disbarment proceeding. Subject to the limitation that the essential elements of notice and opportunity to be heard must be preserved, the judicial department, in view of its exclusive control of membership in the bar, may adopt any procedure in a disbarment proceeding that it deems appropriate for such a proceeding. Cases before the full court relating to admission to the bar have been few. See *Robinson's Case*, 131 Mass. 376; *Sullivan, petitioner*, 185 Mass. 426; *Bergeron, petitioner*, 220 Mass. 472; *De Propper, petitioner*, 236 Mass. 500; *Keenan, petitioner*, 310 Mass. 166. But control "of membership in the bar of the courts of the Commonwealth, both of admission thereto and of removal therefrom, is exclusively in the judicial department of the government of the Commonwealth" (*Keenan, petitioner*, 310 Mass. 166, 171), and "no 'sound distinction can be drawn with respect to attorneys at law between the power to admit and the power to remove under the terms of the Constitution' [*Opinion of the Justices*, 279 Mass. 607, 610]." *Keenan, petitioner*, 310 Mass. 166, 180. It follows that with respect to proceedings for admission to the bar the judicial department has at least as broad power to adopt appropriate procedure as it has with respect to proceedings for disbarment.

The power of the judicial department to adopt appropriate procedure for proceedings for disbarment and for proceedings for admission to the bar extends to the adoption of appropriate procedure for review in such proceedings. It is a necessary implication from the exclusive jurisdiction of the judicial department of control of membership in the bar that the judicial department is not restricted in the matter of review in such proceedings to methods prescribed by statute. If this were not true the judicial department would be restricted by legislative action in the performance of its duties with respect to membership in the bar of which it has "exclusive cognizance." *Opinion of the Justices*, 289 Mass. 607, 613. The judicial department may adopt any procedure for review in proceedings relating to membership in the bar that it deems appropriate, though ordinarily it will follow statutory provisions for review applicable to actions at law, treating such statutory provisions as in aid of the performance of the duties of the judicial department within the field of its exclusive jurisdiction. And ordinarily the judicial department will follow the procedure for review in actions at law established by judicial decisions. But the judicial department is not precluded from adopting such other judicial procedure as it deems appropriate if in its judgment the procedure applicable to review in actions at law is inadequate.

In the proceedings for disbarment and the proceedings for admission to the bar that have come before the full court for review, the procedure applicable to review in actions at law has been followed. And there has been little discussion of the subject in the cases. In *Randall, petitioner*, 11 Allen, 472, an attorney at law who had been disbarred by the Superior Court attempted to obtain revision of the decision of the Superior Court to that effect by quashing the proceedings in that court. This court held that proceedings for disbarment "are to be deemed to be taken according to the course of the common law," that a "person aggrieved by any order, direction or ruling of the court in matters of law" in such proceeding in the Superior Court "can obtain a revision of its proceedings by excep-  .

tions or appeal," and that "a *certiorari* is [not] a proper remedy to correct or revise the proceedings." The case of *Randall, petitioner*, 11 Allen, 473, was a petition for mandamus, brought by the same petitioner as in the case just referred to, for a writ commanding the judges of the Superior Court "to admit the petitioner to the practice of his office of attorney therein." This court, applying the ordinary principles applicable to a writ of mandamus, held it to be clear — and, indeed, the petitioner made no serious contention to the contrary — that the merits of the case could not be inquired into upon such a petition and that the petitioner "must seek redress in other modes than by writ of *mandamus*." Page 478. The petitioner, however, contended that the proceeding in the Superior Court was not authorized by law. The court examined this contention on its merits and held it to be untenable (pages 478–480), but also held that, on the case presented by the petitioner, as matter of discretion of the court the writ ought not to issue. Pages 480–482. The case of *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, was an appeal by the respondent from a judgment of disbarment entered in the Superior Court. This court said: "The proceedings were on the common law side of the court, and our jurisdiction is strictly defined by statutes. An appeal from the Superior Court to the Supreme Judicial Court in an action at law can be taken only from a judgment founded upon matter of law apparent on the record. . . . In such an appeal the case cannot be transferred, but only the questions of law involved" (page 182), and considered the case on this basis. The case of *De Propper, petitioner*, 236 Mass. 500, arose on a petition filed in the Superior Court "for admission or reinstatement as a member of the bar." From an order dismissing the petition the petitioner appealed. This court, following the *Greenhood* case, held that the procedure applicable to appeal in actions at law was to be followed. The results in these cases would have been the same if the court had held therein that the statutes governing review in actions at law were to be regarded as in aid of the judicial department in the exercise of its exclusive jurisdiction

with respect to membership in the bar, and as so regarded were to be followed. It is, indeed, almost inconceivable that a situation would arise in which procedure on review in actions at law would not be appropriate and adequate for review of action of the Superior Court unfavorable to a person resisting disbarment or seeking admission to the bar so that any other procedure for review should be adopted by judicial decision. It is true that the language of the *Greenhood* case seems to treat the statutes regulating procedure on review in actions at law as binding upon the judicial department in cases affecting membership in the bar and as limiting the jurisdiction of the Supreme Judicial Court in such cases. But the language to this effect not necessarily affecting the result of the case was used before the principle that control of membership in the bar is exclusively in the judicial department was clearly declared in *Opinion of the Justices*, 279 Mass. 607, 289 Mass. 607, and in *Keenan, petitioner*, 310 Mass. 166. And this language in the *Greenhood* case is not to be taken as outweighing the later declarations of this principle or as excluding from its application procedure on review in cases affecting membership in the bar.

The determination by the judicial department of the appropriate procedure to be followed in review in proceedings for disbarment or in proceedings for admission to the bar necessarily must be made by the Supreme Judicial Court. This court in *Keenan, petitioner*, 310 Mass. 166, in holding that the Superior Court had jurisdiction under G. L. (Ter. Ed.) c. 221, § 37, of a petition for admission to the bar, said that this section "is to be regarded as a statute in aid of the performance of the duties of the judicial department, effectively conferring such jurisdiction upon the Superior Court — at least unless the Supreme Judicial Court by a valid rule excludes the Superior Court from such jurisdiction" (page 181), and that the exercise by the Superior Court of "the power of the judicial department in this particular" is "subject, by necessary implication, to review by the Supreme Judicial Court in appropriate proceedings." Page 179. Clearly no court other than the

Supreme Judicial Court can speak for the judicial department with respect to the appropriate procedure to be followed in review in proceedings for admission to the bar — or in proceedings for disbarment. The conclusion that the determination by the judicial department of the appropriate procedure to be followed in review in such proceedings is to be made by the Supreme Judicial Court, even if not covered in express terms, is within the principle stated in *Keenan, petitioner*, 310 Mass. 166, 182: "So far, however, as the jurisdiction of petitions for admission to the bar is a matter for determination by the judicial department, independent of the legislative department, such determination naturally must be made by the court that, under the Constitution, is the 'supreme' court, and that, by a statute of long standing, has general supervisory powers over other courts — so far as that court sees fit to make such determination. G. L. (Ter. Ed.) c. 211, § 3."

In the view that we take as to the existence of inherent power in the judicial department, speaking by the Supreme Judicial Court, to determine what constitutes "appropriate proceedings" for review of action of the Superior Court admitting a person to the bar, even though such proceedings do not conform to the procedure fixed by statute for review in actions at law, it is unnecessary to rest the existence of power to make such a determination upon a statutory basis. Nevertheless, there is some statutory support for the existence of this power. By G. L. (Ter. Ed.) c. 211, § 3 — which has remained substantially unchanged since Rev. Sts. c. 81, §§ 4, 5 (*Dolan* v. *Commonwealth*, 304 Mass. 325, 332–333) — it is provided that "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue writs of error, certiorari, mandamus, prohibition, quo warranto and all other writs and processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws." While it has been said that this section, as it appeared in Revised Statutes, is "to be taken

in connection with various other legislative provisions"
(*Commonwealth* v. *Cummings*, 3 Cush. 212, 214; *Dolan* v.
*Commonwealth*, 304 Mass. 325, 333; see also *Peters* v.
*Peters*, 8 Cush. 529, 538; *Commonwealth* v. *Scott*, 123
Mass. 418, 420), it has also been said of this section, as it
appeared in Gen. Sts. c. 112, § 3, that this "broad and
general authority was doubtless conferred for the purpose
of enabling this court to bring before them any proceedings
of judicial tribunals, when there was no special mode pre-
scribed for revising and correcting them." *Mendon* v. *County
Commissioners of Worcester*, 2 Allen, 463, 465. Clearly "no
special mode" is prescribed for bringing before this court
the action of the Superior Court in admitting a person to
the bar, although analogy to procedure in actions at law
may usually provide an adequate method of review which
this court will adopt.

Whether the proceedings now before the court upon these
informations constitute "appropriate proceedings" for re-
view of the action of the Superior Court in admitting the
respondent to the bar can best be dealt with after consid-
ering the objection of the respondent to proceedings upon
these informations that review of the action of the Superior
Court is precluded by the entry in the Superior Court of a
final judgment in favor of this respondent.

2. We consider now the second phase of the respondent's
contention that the full court is without jurisdiction upon
these informations to review the action of the Superior
Court upon the respondent's petition for admission to the
bar, namely, that such review is precluded by the entry
in the Superior Court of a final judgment embodying its de-
cision "reinstating" the respondent as a member of the
bar.

The contention that review of the action of the Superior
Court by the full court on these informations is precluded
by the entry of final judgment cannot be sustained.

The present proceedings do not, as argued by the respond-
ent, constitute collateral attack upon the judgment of the
Superior Court. They are in the nature of direct attack
thereon in that thereby review of the judgment is sought,

or, more accurately, the matter of such review is "submitted for such action as this court shall deem expedient."

According to the more usual procedure in actions at law in the Superior Court review is had, before judgment, on appeal (G. L. [Ter. Ed.] c. 231, § 96), exceptions (G. L. [Ter. Ed.] c. 231, § 113), or report (G. L. [Ter. Ed.] c. 231, § 111), statutory methods of review. But review is not necessarily limited to review before judgment. For example, prior to the passage of St. 1918, c. 257, § 432, appeal in actions at law was from a "judgment." See R. L. c. 173, § 96, as amended by St. 1906, c. 342, § 2, and St. 1910, c. 555, § 4. And there are now statutory provisions, of limited scope, for review, after judgment, by writ of error (G. L. [Ter. Ed.] c. 250, §§ 1–13), writ of review (G. L. [Ter. Ed.] c. 250, §§ 21–36), and motion or petition to vacate judgment. G. L. (Ter. Ed.) c. 250, §§ 14–15. The statute relating to vacating a judgment refers in terms to a "final judgment," but commonly the words "judgment" and "final judgment" are synonymous. Freeman on Judgments (5th ed.) § 2. In equity procedure review is ordinarily, though not exclusively, of a "final decree" — the equivalent in a suit in equity of a "final judgment" in an action at law (see *White* v. *Gove*, 183 Mass. 333, 340) — G. L. (Ter. Ed.) c. 214, §§ 19, 26, 27, 28, 30, 31. And there may be review of a final decree in equity upon a bill of review although not expressly authorized by statute. *Boston* v. *Santosuosso*, 308 Mass. 189. *Boston* v. *Santosuosso*, 308 Mass. 202, 207.

The rule as to the conclusive nature of a judgment in an action at law is stated in *Amory* v. *Assessors of Boston*, 309 Mass. 162, 163, as follows: "Commonly the entry of judgment is the last step in the decision of a case. Subject to such appellate procedure as may be available, to statutory proceedings to vacate or review, and possibly to one or two other exceptions with which we are not here concerned, the judgment as entered is final. The trial court has no further power over it and cannot add to it or amend it, although it may correct mere clerical errors, mistakes in computation, and similar blunders which occasionally occur." See as to

final decree in equity *Commissioner of Insurance* v. *Broad Street Mutual Casualty Ins. Co.* 306 Mass. 362, 365. The respondent, in effect, invokes this rule as applicable to the judgment of the Superior Court in his favor. It was this rule that was stated — though without the important limitation — in *Keenan, petitioner*, 310 Mass. 166, 170, with respect to a judgment of removal from the office of attorney at law, as follows: "A final judgment of removal from such office rendered by a court of competent jurisdiction is binding upon all the courts of the Commonwealth and constitutes an adjudication that, at the time it was rendered, the attorney so removed was not a proper person to hold such office," so that a "subsequent petition for admission to the bar involves a new inquiry as to whether, in the interval following the rendering of the judgment of removal, the petitioner has become a proper person to hold such office." The omission to state the limitation upon the finality of a judgment stated in the *Amory* case does not imply the non-existence of the limitation. There was no occasion to state the limitation in the *Keenan* case. No review of the judgment of removal was sought in that case (page 168), and the statement therefrom here quoted was made for the purpose of defining the issue to be tried upon the petition for admission to the bar. Obviously, since the judgment of removal was entered in the Supreme Judicial Court and the subsequent petition for admission to the bar was filed in the Superior Court, there could be no review of the judgment in that court, either by a hearing de novo of the case, as in *Matter of Mayberry*, 295 Mass. 155, where the hearing de novo was had in the court in which the case was originally heard, or by a review of the decision of the Supreme Judicial Court by the Superior Court as an appellate tribunal. Moreover, there was full recognition elsewhere in the *Keenan* case of the fact that a final judgment of disbarment was subject to review where it is said that the "jurisdiction of the judicial department with respect to membership of a particular person in the bar is not exhausted by a final judgment, favorable or adverse to such person, in a proceeding for his disbarment." Page 168. Furthermore,

in that case, brought by the present respondent by a petition for admission to the bar in the Superior Court, the jurisdiction of that court to hear the petition was upheld, but, in express terms, "subject, by necessary implication, to review by the Supreme Judicial Court in appropriate proceedings." Page 179. This decision was rendered before the judgment in favor of this respondent was entered in the Superior Court. Whatever rights he acquired by the judgment were subject to the possibility of review of such judgment in "appropriate proceedings."

Second. Since, for reasons already stated, it is within the inherent power of the judicial department to be exercised by the Supreme Judicial Court to follow such procedure for review of the judgment of the Superior Court "reinstating" the respondent "to the office of attorney at law" as this court deems "appropriate," even though such procedure does not conform to procedure in review in actions at law, it is necessary to determine whether the present proceedings constitute "appropriate proceedings" for such review. In connection with this determination the respondent's objections to these proceedings on the grounds, in substance, that the informants have no standing to bring the informations and that the allegations therein "are vague and indefinite and set forth no cause of action or ground for relief" are to be considered.

We think that these informations constitute an appropriate method of bringing before the full court for review the action of the Superior Court in admitting the respondent to the bar and that proceedings so instituted constitute "appropriate proceedings" for such review.

The proceedings so instituted for the purpose of review of such action are closely analogous to proceedings for disbarment which have been described earlier in this opinion. Such a proceeding is commonly begun by the filing of a document entitled a "petition," though a petition is not essential. *Matter of Stern*, 299 Mass. 107, 109. The document by which such a proceeding is begun is described in G. L. (Ter. Ed.) c. 221, § 40 — a statute in aid of the performance of the duties of the judicial department — as "a

petition . . . filed for the removal of an attorney." Such a document, however, might properly be described as an "information," for the petitioner seeks thereby no "redress of any grievance suffered by itself," and "simply calls the attention of the court to the alleged misconduct of an attorney . . . that the court, if so disposed, may inquire into the charge and act accordingly," in other words, informs the court of a situation that may call for inquiry by the court in the interests of the public welfare. The proceeding so instituted is not an adversary proceeding. There is no party thereto adversary to the party into whose conduct an inquiry is suggested. Such a petition, if filed by an association of attorneys, is filed in pursuance of the duty of attorneys to the court, but neither the association nor its members, by the filing of the petition, become in law parties to the proceeding. The matter upon the filing of the petition is "in the hands of the court to make the inquest on its own account and to such extent as it . . . [sees] fit." Further proceedings in the matter by the association or its individual members are not in behalf of the association or its members, but in behalf of the court under authority expressly or impliedly conferred by it. *Boston Bar Association* v. *Casey*, 211 Mass. 187, 191–192. Attorneys, however, are not the only persons who may file petitions for disbarment, though the court ordinarily will not inquire into the conduct of an attorney when obviously such inquiry is sought for a private purpose and not in the interests of the public welfare. *Goss Printing Press Co.* v. *Todd*, 202 Mass. 185, 188. See also *Philbrick* v. *Creed*, 228 Mass. 382.

A method of bringing to the attention of the Supreme Judicial Court — the court that has the power of review in matters relating to membership in the bar — action of the Superior Court admitting the respondent to the bar, for the purpose of enabling this court in its discretion to make inquiry with respect to such action, closely similar to the method by which alleged misconduct of an attorney is brought to the attention of the court, seems to us appropriate procedure. Such is the method followed by these informants. They are not asserting any private rights.

According to the concluding statement of each of the informations, "the entire matter is submitted for such action as this court shall deem expedient in the interest[s] of the public welfare." It has been customary for associations of attorneys to file petitions relating to the disbarment of attorneys. It is natural and proper that in like manner a bar association should file an information of the nature of those now before us "in the interest[s] of the public welfare.". And obviously the Attorney General of the Commonwealth, the chief law officer of the Commonwealth, is a proper person to file such an information. It is not essential that an informant should have any private interest, and these informants assert none. On the contrary, private rights in the informants would give them no standing to bring the informations. An assertion of private rights in the informants would be unfavorable rather than favorable to the maintenance of the informations.

Nor is it essential that the informants should have participated in the proceedings in the Superior Court. The Attorney General and the Massachusetts Bar Association did not so participate. Indeed, they were not permitted to do so. The Bar Association of the City of Boston so participated as the result of notice to it ordered by the Superior Court. Whether by reason of such notice this association was authorized to seek review on appeal or exceptions is at best doubtful, and need not be decided. See *Matter of Mayberry*, 295 Mass. 155, 160. This association saved exceptions to the order of the Superior Court admitting the respondent to the bar and its bill of exceptions was disallowed. Neither the steps that the association took in the matter nor its failure to take further steps to bring its exceptions to this court can be held to preclude it from informing this court of the action of the Superior Court for the purpose of such inquiry with respect thereto as this court may deem expedient.

Pursuant to analogy to proceedings for disbarment, the objection to the informations respectively that the allegations therein are "vague and indefinite and set forth no cause of action or ground for relief" and are not sufficient

to entitle the informant "to any judgment of or to any relief from this honorable court" is without merit. It is not the purpose of the informations to obtain any judgment or relief for the informants, and the informations are sufficient, coupled with the order of the court thereon, to advise the respondent that an inquiry into the action of the Superior Court admitting him to the bar is proposed.

We perceive no difficulty in bringing the proceedings in the Superior Court before this court for review or in reviewing such proceedings in this court that renders inappropriate proceedings in this court upon the informations.

It is clear that the public interests require that there be an adequate method of review of action of the Superior Court in admitting a person to the bar, particularly a person who has previously been disbarred. *Grievance Committee of the Hartford County Bar* v. *Broder,* 112 Conn. 263, 267–269. See also *Vernon County Bar Association* v. *Mc-Kibbin,* 153 Wis. 350. It may well be, however, that, if there were any statutory method of review in actions at law that would be appropriate and adequate for review of the action of the Superior Court in admitting the respondent to the bar, this court would not deem proceedings upon the informations "appropriate" for such review. But we think that there is no such statutory method for review in actions at law that, considered as an aid to this court in the performance of its duty with respect to membership in the bar, would be appropriate and adequate for review of the action of the Superior Court in admitting the respondent to the bar. All the statutory methods of review, apart from report by the trial judge, are dependent upon action by a party aggrieved, and there is no party that at law is aggrieved by the admission of the respondent to the bar. Even if the Bar Association of the City of Boston, by virtue of the notice to it of the respondent's petition for admission to the bar, had any standing to seek review of the action of the Superior Court thereon, it was by reason of a power conferred by the Superior Court. Any method of review so restricted is not adequate for the exercise of the power of review inherent in the Supreme Judicial Court.

And the method of review on report is dependent upon the exercise of the discretion of the trial judge in the Superior Court. While it is to be assumed that a trial judge will exercise a sound judicial discretion, review of action admitting a person to the bar dependent wholly upon his exercise of discretion is not adequate for the exercise of the power of review of such action inherent in the Supreme Judicial Court.

The conclusion that proceedings upon the informations constitute "appropriate proceedings" for review by the full court of the action of the Superior Court in "reinstating . . . [the respondent] to the office of attorney at law" does not import that some other form of proceedings may not also be appropriate, or that it would not be possible for the full court in its discretion — as in the case of a trial court with respect to disbarment proceedings, *Randall, petitioner*, 11 Allen, 473, 479; *Matter of Sleeper*, 251 Mass. 6, 21; *Matter of Stern*, 299 Mass. 107, 109 — to institute proceedings for review of such action upon its own motion.

Third. Inquiry by the full court into the action of the Superior Court in "reinstating . . . [the respondent] to the office of attorney at law" is not precluded on the ground stated by him with respect to each of the informations that "there are no allegations of fact or law set forth in said 'Information' showing or tending to show that the Superior Court committed error of law in the proceedings in said court, set forth in said 'Information.'" It is enough if, by any or all of such informations together with the matters of record in this court in the cases relating to the disbarment of the respondent and his petition for admission to the bar, it appears to this court that the matter involved in the informations is one with respect to which there is ground for inquiry by this court into the action of the Superior Court in "reinstating . . . [the respondent] to the office of attorney at law."

Such a ground for inquiry appears. The respondent was disbarred for the reason that he "corruptly influenced three jurymen who sat in" a case tried in the Superior Court "and was thereby guilty of gross misconduct." *Matter of*

*Keenan,* 287 Mass. 577, 585. Conduct of this nature on the part of persons not members of the bar has been described as constituting "most dangerous assaults upon the integrity of our courts in the trial of cases." And with respect to the punishment of such offences as criminal contempts, it has been said that it "is inconceivable that any court would treat such an offence as anything less than a criminal contempt of the gravest character." *Hurley* v. *Commonwealth,* 188 Mass. 443, 447. *Dolan* v. *Commonwealth,* 304 Mass. 325, 345–346. Obviously, though such misconduct on the part of any person is of the "gravest character," it is particularly serious on the part of an attorney at law in view of his position as an officer of the court.

It is hardly necessary to go farther than to state the grave character of the offence for which the respondent was disbarred to show that there is ground for inquiry by this court, in its discretion, into the action of the Superior Court in "reinstating . . . [the respondent] to the office of attorney at law." The practice of law "is open only to individuals proved to the satisfaction of the court . . . to be of good moral character" as well as to possess certain other specific qualifications. *Opinion of the Justices,* 289 Mass. 607, 613. An attorney at law "is an officer of the court sworn to aid in the administration of justice and to act with all good fidelity both to his clients and to the court. The public have a deep and vital interest in his integrity. . . . It is a matter of profound importance from every point of view that members of the bar be men of probity and rectitude." *Berman* v. *Coakley,* 243 Mass. 348, 354. An attorney at law "is held out by the Commonwealth" acting by its judicial department "as one worthy of trust and confidence in matters pertaining to the law." *Bergeron, petitioner,* 220 Mass. 472, 476. "Evidence supporting any want of moral probity or integrity, or showing misconduct of such nature that the respondent is unfit to be trusted by clients or by the court or to bear the responsibilities and perform the duties of an attorney at law is enough to warrant and to demand disciplinary action by the courts. It is required by G. L. c. 221, § 37, that applicants for admis-

sion to the bar shall be of good moral character. If and when an attorney at law ceases to possess such character, that is sufficient cause for disbarment." *Matter of Ulmer*, 268 Mass. 373, 396–397. The requirements of the law, apart from the statute, are no less onerous. The courts "have always deemed it a part of their duty to remove from his office any attorney who in character and conduct has ceased to be a person proper to be held out by the court to the public as trustworthy." *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 182–183. "The removal of attorneys, who have become unfaithful to their trust and are unfit longer to exercise their office and to be held out as trustworthy, faithful and competent, is of concern to all the people." *Burrage* v. *County of Bristol*, 210 Mass. 299, 301.

In conformity with the principles here stated, a judgment of removal from his office as an attorney at law was entered against the respondent on the ground of "gross misconduct" — misconduct of the gravest character. The general principle applicable to the subsequent admission to the bar of "a party so removed from the office of attorney" is that he "is not, by force of such a final judgment, though unreversed, precluded from applying 'for readmission if his offence was of such a kind that, after a lapse of time, he can satisfy the court that he has become trustworthy.' *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 183." *Keenan, petitioner*, 310 Mass. 166, 168. And a person who has been so removed from his office must meet the same high standard of good moral character for admission to the bar as is required to be met by a person who has never been admitted to the bar and consequently never been disbarred. But a person who has been disbarred does not come into court upon his subsequent petition for admission to the bar upon the same level as does a person who has no record of misconduct. A judgment of removal of a person from his office of attorney at law does not have the effect merely of removing him. It amounts also to an adjudication of the facts upon which the removal was based. While the judgment remains unreversed the adjudication of facts stands

against the person removed. It is evidence against him upon his subsequent petition for admission to the bar. *De Propper, petitioner*, 236 Mass. 500, 501–502. See also *Matter of Ulmer*, 268 Mass. 373, 397–403. It is conclusive evidence of his lack of moral character at the time of his removal from office. And it continues to be evidence against him with respect to lack of moral character at later times in accordance with the principle that "a state of things once proved to exist may generally be found to continue." *Galdston* v. *McCarthy*, 302 Mass. 36, 37. Whatever the offence for which a judgment of disbarment was entered, the person disbarred has a heavy burden on a subsequent petition for admission to the bar to overcome by evidence the weight of the facts adjudicated by such judgment and to establish affirmatively that since his disbarment he has become "a person proper to be held out by the court to the public as trustworthy." *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 183.

It was intimated in the *Greenhood* case that a disbarment may be for an offence of "such a kind" that it is impossible for the person disbarred to overcome by evidence the weight of the facts adjudicated against him by the judgment of disbarment. This court has never had occasion to decide whether any particular offence was of "such a kind."

There has been no decision by this court that the offence for which the respondent was disbarred was or was not an offence of "such a kind." The respondent argues that the decision of this court in *Keenan, petitioner*, 310 Mass. 166, that the Superior Court had jurisdiction of his petition for admission to the bar was a decision that the offence for which the respondent was disbarred was not of "such a kind." This question was not specifically reported and, indeed, was not reported at all unless it is inherent in the general question of jurisdiction that was reported. And this court did not purport to decide the question whether the respondent's offence was of "such a kind" that after his disbarment therefor he could not again be admitted to the bar. This question is not dealt with in the opinion of the court, though the general principle governing admission

to the bar of a person disbarred was referred to therein. Pages 173–174. Nor was the question argued by counsel. Indeed, counsel for the respondent stated in his brief: "The single issue raised in the report is: Has the Superior Court for Suffolk County jurisdiction to entertain a petition for readmission to practise law in this Commonwealth by an attorney who has been disbarred in the Supreme Judicial Court for Suffolk County. No other question of procedure is raised by this report." In this situation this court did not prejudge the question that would necessarily arise in the Superior Court upon the respondent's petition for admission to the bar whether, in view of the nature of the respondent's offence, he was precluded from maintaining the petition. This court dealt specifically only with the jurisdiction of the Superior Court and not with the manner in which such jurisdiction should be exercised. But even if it could be said that the question whether the Superior Court was or was not precluded from exercising such jurisdiction in the case of the present respondent by reason of the nature of the offence for which he was disbarred was impliedly decided in favor of the respondent — though without argument and without express mention in the opinion — this court would not be precluded by its interlocutory decision upon the matter of jurisdiction, according to procedure in ordinary actions at law, on any principle of res judicata or law of the case, from considering the question in later proceedings. *Peterson* v. *Hopson*, 306 Mass. 597, 601–602. A fortiori, this court is not so precluded in a case affecting membership in the bar. See *Matter of Mayberry*, 295 Mass. 155, 160–161; *Keenan, petitioner*, 310 Mass. 166, 168. Doubtless this court, in accordance with the principles stated in the present opinion, in its discretion and upon its own motion, upon the matter coming to its attention on the report of the jurisdictional question could have determined whether the respondent was precluded from admission to the bar by the nature of the offence for which he was disbarred, but it would not naturally exercise its discretion to do so while the case was pending in the Superior Court subject to later review by this court and

when the matter had not been argued by counsel in this court.

The offence for which the respondent was disbarred was of so grave a character that, in the present state of the decisions, a substantial question worthy of judicial inquiry is presented whether it was of "such a kind" as to preclude the subsequent admission to the bar of a person adjudged guilty of this offence. As the question is now brought to our attention, after the case has been finally heard in the Superior Court, we deem it one into which inquiry should be made by the full court. ·

If it were to be assumed in favor of the respondent that the offence for which he was disbarred was not of "such a kind" as to preclude his subsequent admission to the bar, another question would be presented. The adjudication that the respondent was guilty of this offence is clearly evidence of great weight that he is not a proper person to be admitted to the bar, and such evidence could be overcome, if at all, only by evidence of greater weight. We have not before us the evidence that the judge of the Superior Court, by his decision, impliedly held to be of sufficient weight to overcome the evidence consisting of the fact, adjudicated by the judgment of disbarment, that he was guilty of an offence of the gravest character. But in view of the heavy burden imposed upon the respondent to overcome this evidence, we think that a substantial question worthy of judicial inquiry is presented whether such evidence was produced. We deem this matter one into which inquiry should be made by the full court. For the purpose of such inquiry it is essential that the proceedings in the Superior Court be before us.

For the reasons stated we conclude that inquiry should be made into the action of the Superior Court in "reinstating . . . [the respondent] to the office of attorney at law." The statement herein of the grounds for the inquiry, however, is not to be regarded as limiting the scope of the inquiry to these grounds. Nor is any limitation upon the scope of the inquiry in other respects to be implied. As already pointed out, this court is not restricted to such pro-

cedure as is followed in ordinary actions at law. Consequently the court is not precluded, as in actions at law, from considering the weight of the evidence. We do not attempt to forecast in this opinion the nature of the proceedings that will be deemed appropriate after the record of the case in the Superior Court has been examined by the full court.

Fourth. Since the three informations that have been filed in this court relate to the same case in the Superior Court it is obvious that they should be consolidated as one case for the purpose of further proceedings. For the purpose of an inquiry by this court in this consolidated case into the proceedings of the Superior Court it is essential that the record of the proceedings in that court be before us. The proper order to bring such record before us is an order similar to a writ of error, modified to meet the requirements of the present proceedings — that the Chief Justice of the Superior Court "send us the record and process of the suit aforesaid, with all things touching them." See *Dolan* v. *Commonwealth*, 304 Mass. 325, 327. There are, however, differences in that the return of the Chief Justice to the order in the present proceeding is to be made to the Supreme Judicial Court for the Commonwealth and to be transmitted to the clerk of the Supreme Judicial Court for the Commonwealth, and in that the contents of the return are not subject to the technical limitations upon a return to a writ of error. The return should include not only the technical record of the case in the Superior Court but also all papers filed therein though not technically a part of the record, and a transcript of the evidence if, as we assume, the evidence was taken by an official stenographer. Orders with respect to further proceedings in the matter of these informations may be made by this court upon its own motion, or upon motion of the respondent or of any of the informants who are hereby authorized to conduct proceedings in the case subject to the further orders of this court.

It is therefore ordered that the cases instituted by these informations be consolidated as one case for the purpose of further proceedings and that for the purpose of such proceedings the Chief Justice of the Superior Court send us

the record of the proceedings in that court in the case of Wilfred B. Keenan, petitioner for admission to the bar, such record to include or to be accompanied by, as an extension thereof, copies of all papers filed in the case and a transcript of the evidence in the case if such evidence was taken by an official stenographer.

*So ordered.*